WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tina Gardner,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-22-00321-TUC-LCK<br><br>**ORDER** |

  Plaintiff Tina Gardner filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Gardner's Opening Brief, Defendant's Responsive Brief, and a Reply. (Docs. 16-18.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 13.) Based on the pleadings and the Administrative Record, the Court remands this matter for further proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

  Plaintiff filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in August 2019. (Administrative Record (AR) 305, 309.) She alleged disability from April 1, 2017. (AR 305, 309.) She was born in July 1966, making her 50 years of age at the onset date of her alleged disability. (AR 305.) She stopped working because she couldn't breathe well or easily move around. (AR 77.) In the year prior to Plaintiff stopping work, she was employed in customer service at a call center. (AR

345.) For the prior 15 years, she worked as a veterinary assistant at an animal hospital. (AR 345, 356.)

Plaintiff's application was denied upon initial review (AR 93-112) and on reconsideration (AR 113-52). A telephonic hearing was held on April 12, 2021 (AR 73-92), and a supplemental telephonic hearing was held on August 25, 2021 (AR 47-72). The ALJ then found Plaintiff not disabled. (AR 14-24.) The ALJ determined Plaintiff had severe impairments of deep vein thrombosis (DVT) with pulmonary embolism in March 2020; status post breast cancer and bilateral mastectomies with failed left reconstruction; bilateral upper extremity lymphedema; and obesity. (AR 17.) The ALJ concluded Plaintiff had the Residual Functional Capacity (RFC) to perform light work with no exposure to dangerous equipment. (AR 19.) He concluded at Step Four that Plaintiff could perform her past work as a customer service representative. (AR 23.) The Appeals Council denied review of the ALJ's decision. (AR 1.)

**STANDARD OF REVIEW**

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings

of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Plaintiff alleges the ALJ committed four errors: (1) the ALJ's finding that Plaintiff's COVID-19 infection failed to satisfy the duration requirement for a severe impairment was not supported by substantial evidence; (2) the ALJ's reasons for adopting Dr. Goldstein's opinion were not supported by substantial evidence; (3) the ALJ's reasons for rejecting Dr. D'Souza's opinion were not supported by substantial evidence; and (4) the ALJ failed to provide germane reasons to reject a lay witness statement.

### COVID-19

The ALJ acknowledged that Plaintiff was diagnosed with COVID-19 on January 7, 2021, with some residual shortness of breath. (AR 17.) He concluded that it was not "a severe impairment of the requisite 12-month duration," citing Plaintiff's testimony that "she 'kind of' recovered from COVID-19 and that she still had breathing problems only secondary to viral pneumonia." (*Id.*)

Plaintiff argues that record evidence establishes Plaintiff's COVID-19 symptoms could be expected to last 12 or more months. In support she cites a November 10, 2021, record from pulmonologist Dr. Ahmed. He assessed Plaintiff with dyspnea (shortness of breath), sleep apnea, and COVID-19 infection, stating "symptoms overall favors – post covid long hauler." (AR 31.) Dr. Ahmed reviewed a November 3, 2021, pulmonary function test, which documented mildly reduced diffusion capacity. (AR 33.)

Plaintiff argues that this Court may consider the November 2021 medical evidence in determining whether the ALJ's September 2021 decision was supported by substantial evidence, because she submitted it to the Appeals Council when seeking review. If the Appeals Council considers new evidence when reaching a conclusion on whether to review the ALJ's decision, the district court also should consider that evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). Defendant does not dispute Plaintiff's contention that *Brewes* directs the Court to consider the November 2021 evidence. (Doc. 17 at 5.) The Court finds, however, that *Brewes* does not control because the Appeals Council did not consider the evidence, finding it did not relate to the period on or before the ALJ's September 2021 decision. (AR 2.) Instead, the Court must assess if the Appeals Council should have considered the new evidence because, if so, the Court is directed to remand the matter for the ALJ to reconsider his decision based on the additional evidence. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011). If the evidence from Dr. Ahmed related to the pre-September 2021 period, the Appeals Council should have considered it. The Ninth Circuit has found, "it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) ("It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis.") (citing *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975); *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985)).

Plaintiff was diagnosed with COVID-19 in January 2021. (AR 1491.) During the same hospital visit, she was diagnosed with viral pneumonia. (AR 1491, 1497.) According

to the CDC, SARS-CoV-2 (the virus that causes COVID-19) is a common cause of viral pneumonia.[1] At the April 2021 hearing, when asked if she had recovered from COVID-19, Plaintiff testified:

> Kind of. I still believe that I am having some breathing problems due to the scarring in the lungs. I have viral pneumonia. I still have a hard time breathing when I move around a lot. I get up to go to the restroom and come back and I have to take a break, rest for awhile before I can even think about doing anything. And I believe that is part of the cause.

(AR 79.) Thus, in April, Plaintiff confirmed that she was continuing to experience breathing limitations from her January illness. The ALJ suggested that Plaintiff's breathing problems were secondary only to pneumonia. (AR 17.) To the contrary, Plaintiff's testimony indicates her ongoing breathing problems were due, in part, to COVID-19. And it is evident that the pneumonia was a result of that virus. At the August 2021 hearing, Plaintiff testified that her symptoms had stayed the same or progressed a bit. (AR 51.)

A diagnosis and functional testing related to shortness of breath and fatigue are significant in this case. The testifying medical expert, Dr. Goldstein, did not include those symptoms in his RFC finding because there was no pulmonary function test or causative finding for the symptoms. (AR 55-58.) The ALJ adopted Dr. Goldstein's RFC finding, which did not account for those symptoms. Less than two months later, a pulmonologist surmised that Plaintiff was suffering from long COVID, which may contribute to shortness of breath and fatigue. Given the absence of record evidence to the contrary, Dr. Ahmed's opinion may have been sufficient to establish that diagnosis by a preponderance of the evidence, the standard applicable to the ALJ's findings. 20 C.F.R. §§ 404.953(a), 416.953(a).

Long COVID is an impairment relevant to Plaintiff's ongoing fatigue and breathing problems. Additionally, the pulmonary function test demonstrated some deficiency. As those symptoms recur throughout the record, the November 2021 records are relevant to the period prior to the ALJ's decision. If the ALJ accepted Dr. Ahmed's diagnosis, that

---

[1] https://www.cdc.gov/pneumonia/causes.html. Last reviewed on September 18, 2023.

would demonstrate COVID-19 lasting for ten months, and the ALJ could determine it was expected to last for 12 or more months (or obtain additional evidence to evaluate if the impairment had in fact lasted 12 months). *See* 20 C.F.R. §§ 404.1509, 416.909 (setting durational requirement that impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."). Because the November 2021 evidence is new and relevant to Plaintiff's period of disability, the Appeals Council should have considered it when deciding whether to review the ALJ's decision. *Taylor* is factually analogous because that case was remanded to the ALJ, in part, because the Appeals Council failed to consider new evidence that post-dated the ALJ's decision, but which the Ninth Circuit concluded related to the relevant period. 659 F.3d at 1233. Therefore, the Court will not evaluate whether substantial evidence supported the ALJ's decision regarding COVID-19. Instead, the Court must remand this matter to the ALJ to consider that evidence. *See id.*

**Medical Opinions**

The regulations governing cases filed after March 27, 2017, such as this one, provide that an ALJ will consider all medical opinions and, at a minimum, articulate how the ALJ evaluated the opinions' supportability and consistency. 20 C.F.R. §§ 404.1520c(a) & (b), 416.920c(a) & (b). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). "The more relevant the objective medical evidence and supporting explanations presented and the more consistent with evidence from other sources, the more persuasive a medical opinion or prior finding." *Machelle H. v. Kijakazi*, No. 1:20-CV-00357-CWD, 2021 WL 4342313, at *7 (D. Idaho Sept. 22, 2021). "In sum, the [ALJ] must explain his reasoning and specifically address how he considered the supportability and consistency of the opinion, and his reasoning must be free from legal error and supported by substantial evidence." *Id.*

Dr. Goldstein

The ALJ asked neurologist Dr. Goldstein to testify at the supplemental hearing as an independent medical expert. The doctor opined that Plaintiff had the following medically determinable physical impairments, breast cancer with chemotherapy and reconstructive surgery, with wound infections; DVT; use of Eliquis; and obesity. (AR 54.) He also acknowledged there was record evidence that Plaintiff experienced swelling and lymphedema of the upper extremities. (AR 61-62.) He stated that Plaintiff elevating her arms would not be helpful for lymphedema, although raising ones' arms above the heart can help reduce swelling from edema.[2] (AR 62-63.) The doctor stated that Plaintiff's reports of severe fatigue and shortness of breath could have various causes, including lung damage sustained from pulmonary emboli, deconditioning, or cardiac arrhythmia. (AR 55, 58.) He stated that the record did not contain a pulmonary function test or other medically determined causation for those symptoms. (AR 55-56, 57-58.) Dr. Goldstein opined that Plaintiff was limited to light work, and she should not be near dangerous equipment due to her prescribed blood thinner. (AR 56.) The doctor stated that the record did not contain quantitative information for him to assess how much rest, if any, Plaintiff may need per hour. (AR 64-65.)

The ALJ stated that he adopted Dr. Goldstein's opinion because it was "the most comprehensive opinion subject to examination by counsel"; he is a specialist familiar with the Social Security policies; he reviewed the entire documentary record; and he provided a detailed explanation with record citations to support his opinion.[3] (AR 22.) Plaintiff argues that it was improper for Dr. Goldstein not to consider her shortness of breath and fatigue

---

[2] Plaintiff argues that the ALJ erred in not including Dr. Goldstein's implicit opinion that she had a limited ability to elevate her arms. Dr. Goldstein did not find Plaintiff had a limitation in raising her arms. He testified only that elevating one's arms was not a remedy for lymphedema; therefore, it would not provide Plaintiff relief. (AR 62-63.)

[3] In addition to supportability, the ALJ was obligated to discuss whether Dr. Goldstein's opinion was consistent with other record evidence and failed to do so. (AR 20-22.) Because Plaintiff did not raise this issue in her brief, the Court does not rely upon it in ruling. However, upon remand, the ALJ must be cognizant of his obligation to explain the consistency and supportability of each medical opinion.

- 7 -

solely due to the absence of a pulmonary function test. And she contends there is not substantial evidence to support the ALJ's adoption of Dr. Goldstein's opinion because he failed to consider those symptoms.

In creating the RFC, the ALJ must consider limitations from impairments and symptoms related to those impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Dr. Goldstein stated that he did not factor shortness of breath or fatigue into his opinion because there was an absence of evidence tying it to a medically determinable impairment. (AR 55-58.) He explained that a pulmonary function test would have revealed whether she sustained functional damage from the pulmonary emboli she had experienced. (AR 55, 57-58.) But he noted there were other possible explanations for those symptoms, including deconditioning. (AR 55, 57.) Deconditioning is not an impairment relevant to the RFC.

Plaintiff argues that shortness of breath and fatigue were consistent not only with her pulmonary emboli, but also long COVID and sleep apnea. As discussed above, Dr. Goldstein considered the pulmonary emboli, but lacked sufficient evidence to link those symptoms with that impairment. Plaintiff refers to numerous records mentioning sleep apnea, but none include a diagnosis. The cited records discuss possible sleep apnea or are from oncology visits documenting that Plaintiff reported a history of sleep apnea. (Doc. 16 at 7 (citing AR 610, 613, 624, 646, 767, 1485, 1516, 1519, 1655).) In December 2020, her primary care doctor documented that Plaintiff never completed a sleep apnea exam. (AR 1622.) In sum, there is no direct evidence that Plaintiff was diagnosed with sleep apnea or evaluated for how it impacted her functioning. Dr. Goldstein reviewed evidence of Plaintiff's January 2021 COVID-19 diagnosis. But he did not possess evidence that it evidenced an impairment expected to last 12 or more months, or that it was linked to any functional limitations. Based on the evidence available to Dr. Goldstein and the ALJ, Plaintiff has not demonstrated an absence of substantial evidence to support the ALJ's adoption of Dr. Goldstein's opinion. *But see supra* note 3.

The Court is remanding this matter, however, for the ALJ to consider the evidence of long COVID. The ALJ then will evaluate whether there is evidence that long COVID

was a medically determinable impairment of sufficient duration. And, if so, whether Plaintiff experienced related limitations.[4] This evaluation may require the ALJ to reconsider Dr. Goldstein's testimony and Plaintiff's RFC.

Dr. D'Souza

On October 22, 2019, Dr. Netley D'Souza completed a Physical Medical Source Statement indicating that he saw Plaintiff every one to two months. (AR 904.) He diagnosed Plaintiff with breast cancer, DVT, and open wounds, with a fair to poor prognosis. (*Id.*) Dr. D'Souza stated that Plaintiff had back pain, fatigue, shortness of breath, and an open wound on her breast. (*Id.*) His clinical findings to support his opinion included limited back movement (30°), open wound with drainage, swelling of upper extremities, and shortness of breath. (*Id.*) The doctor indicated ongoing hyperbaric oxygen treatment, wound vacuum, and antibiotics, as well as planned surgery, and a treatment side effect of dizziness and/or weakness. (*Id.*)

Dr. D'Souza opined that Plaintiff could walk at most 1 block without resting; sit for 20 minutes at a time; stand for 10 minutes at a time; and sit and stand/walk for less than two hours each per workday. (AR 905.) He stated that she required the ability to shift positions at will and take unscheduled breaks for 10-15 minutes per hour due to muscle weakness, chronic fatigue, and pain. (*Id.*) Due to leg swelling, the doctor determined that Plaintiff needed to elevate her legs 75% of the time if she was working in a seated position. (AR 906.) The doctor limited her to never lifting or carrying any weight, crouching, or climbing stairs or ladders; and rarely twisting or stooping. (*Id.*) Dr. D'Souza limited Plaintiff to 10% of the day spent grasping/turning/twisting with her hands, fine finger manipulations, and reaching overhead; and 25% of the day spent reaching in front of her body. (*Id.*) He concluded Plaintiff would be off task 25% or more of a typical workday due to symptoms severe enough to interfere with her attention and concentration. (AR 907.)

---

[4] For consideration on remand, there is evidence in the record of lung damage prior to Plaintiff's COVID-19 diagnosis. (AR 1530 (June 5, 2020, CT scan revealed mild scarring in lung bases); AR 1600 (September 26, 2020, CT scan showed changes in lung bases compatible with scarring).) After her diagnosis, on March 30, 2021, a CT scan showed minimal subpleural fibrotic changes to the periphery of the left lung. (AR 1638.)

Due to anxiety and fatigue, he found Plaintiff incapable of tolerating even low stress work. (*Id.*) Because Plaintiff was likely to experience good and bad days, the doctor estimated Plaintiff would miss more than four days per month due to her impairments. (*Id.*) He reported that Plaintiff experienced severe psychological limitations due to homelessness, and severe financial difficulties and a lack of insurance prevented her from completing referrals. (*Id.*)

The ALJ summarized numerous appointment records from Plaintiff's examinations by Dr. D'Souza. (AR 22 (citing AR 591, 594, 598, 601, 604-05, 608, 998-99, 1053-54).) He then determined that the doctor's clinical findings did not support all of his diagnoses. (*Id.*) He also found Dr. D'Souza's opinion that Plaintiff needed to keep her arms elevated not persuasive, because Dr. Goldstein testified that elevating extremities is not helpful for someone with lymphedema. As an initial matter, Dr D'Souza did not find that Plaintiff had a functional limitation such that she needed to keep her arms elevated any portion of a workday. (AR 904-07.) Rather, shortly after Plaintiff's September 2017 bilateral DVTs in her upper extremities, Dr D'Souza recommended Plaintiff elevate her arms to reduce swelling. (AR 647.) Because D'Souza did not include a finding that Plaintiff needed to keep her arms elevated, the ALJ's rejection of such a finding is irrelevant.

Plaintiff argues the ALJ failed to provide sufficient reasons for rejecting Dr. D'Souza's opinion regarding Plaintiff's functional limitations. In particular, the ALJ rejected Dr. D'Souza's opinion that Plaintiff could work less than 4 hours per day (sit less than two hours per day and stand/walk less than two hours per day) and would miss more than 4 days of work per month; had substantial limitations in her ability to handle, finger, and reach; and could sit for only 20 minutes at one time. The only reason the ALJ offered to reject those limitations (and the whole of Dr. D'Souza's opinion) was that the findings in the doctor's records did "not support all his reported impairing diagnoses." The ALJ's conclusion was limited to diagnoses and did not address the many specific functional limitations identified by Dr. D'Souza. For that reason, the ALJ erred in failing to explain how the doctor's opinion lacked support. Even if the Court reads the ALJ's conclusion to

apply beyond Dr. D'Souza's diagnoses to the entirety of his opinion, the ALJ's ruling is too general. Although the ALJ implicitly rejected the entirety of Dr. D'Souza's opinion , by finding that the doctor's examinations did not support *all* of his findings, the ALJ implicitly concluded his examinations supported some of them. For example, on repeated examinations, Dr. D'Souza found that Plaintiff had upper extremity swelling, left or bilateral, sometimes accompanied by a restriction in her range of motion. (AR 590-91, 595, 598 601, 604, 618, 624, 641, 643, 647, 999, 1003, 1054.) The ALJ noted some of these findings, but he failed to discuss whether they supported Dr. D'Souza's limitations on Plaintiff's ability to lift and carry, use her fingers and hands, or reach with her arms. It was the ALJ's obligation to delineate which portions of Dr. D'Souza's opinion he found not supported by his medical findings. He failed to do so. He also did not address the consistency of Dr. D'Souza's opinion with the other record evidence. Therefore, the ALJ erred in his treatment of Dr. D'Souza's opinion.

**Lay Witness Testimony**

On March 10, 2021, Robson and Alice Alder submitted a joint letter based on their 18-year knowledge of Plaintiff. (AR 449.) They attested that, in their early acquaintance with Plaintiff, she was energetic, and any pain or discomfort she experienced did not prevent her from maintaining her activities. (*Id.*) She cared for her daughters as a single parent and helped with house chores during periods when she lived with the Alders. (*Id.*) The Alders stated that, since being diagnosed with cancer, she has not been the same. (*Id.*) Walking only 3 to 4 feet causes Plaintiff to become short of breath, she requires numerous rest breaks and/or support to walk, and she needs assistance when getting out of a chair or she risks falling. (*Id.*) They also noted that Plaintiff no longer has a positive outlook due to the loss of her previous abilities. (*Id.*)

Pursuant to Ninth Circuit caselaw from 1993, "[i]f the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). This requirement satisfies the regulation that the ALJ would "consider observations by non-medical sources as to how an

impairment affects a claimant's ability to work." *Id.* (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). Defendant argues that caselaw no longer applies because the regulations have changed, citing 20 C.F.R. §§ 405.920c, 416.920c, which provide: "[w]e are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." This regulatory change does not provide that an ALJ need not articulate any reason for discounting evidence from lay witnesses, it only states that the ALJ's consideration need not follow the requirements for evaluating medical opinions. This regulatory change is not inconsistent with the Ninth Circuit's germane-reasons standard. *See Rogers v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00532-TUC-SHR-MSA, 2022 WL 464911, at *7 (D. Ariz. Jan. 11, 2022) ("the germane-reasons standard 'has always been a different (and lower) standard than that required for evaluating medical opinions.'") (quoting *Alice B. v. Kijakazi*, No. 20-cv-05897, 2021 WL 6113000, at *8 (N.D. Cal. Dec. 27, 2021)), report and recommendation adopted, 2022 WL 458517 (D. Ariz. Feb. 15, 2022); *see also Kimberly T. v. Kijakazi*, No. 3:20-CV-1543-SI, 2022 WL 910083, at *7 (D. Or. Mar. 29, 2022) ("Because there are no provisions of the new regulations that unambiguously remove the ALJ's obligation to address lay witness testimony, it follows that the ALJ must continue to give germane reasons for discounting lay witness testimony."); *but see, e.g., John E.L. v. Comm'r of Soc. Sec.*, No. 3:20-CV-5776-TLF, 2021 WL 5150359, at *7 (W.D. Wash. Nov. 5, 2021) (finding ALJ not required to offer any discussion regarding lay witness testimony under the 2017 regulations). The Court agrees with the conclusion in the majority of the above-cited cases that the ALJ was obligated to offer germane reasons to reject the Alders' testimony. Further, the ALJ articulated several reasons he rejected the lay witness statement; therefore, the Court need not ignore the rationale supplied by the ALJ.

The ALJ found the Alders' testimony not persuasive because it was inconsistent with Dr. Goldstein's opinion; the Alders were not medically trained to make exacting observations; the Alders were not disinterested because their statement could be colored by a bias to confirm the claimant's allegations; and the Alders were not an acceptable

medical source. (AR 23.) To the extent the ALJ found the Alders' testimony inconsistent with Dr. Goldstein's opinion, that can be a germane reason to reject the Alders' testimony. *See White v. Kijakazi*, No. 21-35756, 2022 WL 6649616, at *2 (9th Cir. Oct. 11, 2022) (finding medical opinions contradicted lay witness statements). The Court is remanding this matter for the ALJ to consider medical evidence relevant to Plaintiff's shortness of breath and fatigue, which are the primary issues addressed by the Alders. Therefore, the ALJ also should reevaluate their testimony on remand.

Because the ALJ will be reexamining the Alders' testimony on remand, the Court briefly addresses the other rationale the ALJ provided for rejecting it. First, the fact that the Alders were not medically trained and were not acceptable medical sources were not germane reasons to discount their testimony. This rationale would apply to virtually all lay witness testimony and would exempt ALJs from discussing all observations from persons without medical training. ALJ's are directed to look to non-medical sources when the objective medical evidence alone does not direct a fully favorable decision. SSR 16-3p ¶ 2. The ALJ's rationale also contradicts the Ninth Circuit's holding that "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (finding a wife competent to testify despite not being a medical expert). Next, in light of the circuit court's finding that friends and family are competent to testify about their observations of a claimant's symptoms and activities, it was not legitimate for the ALJ to discount the Alders' testimony because their friendship may have given them an interest in the outcome. *See Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)). The indefensibility of this reasoning by the ALJ is highlighted by the fact that Defendant did not defend the reasons provided by the ALJ as providing a sufficient basis to reject lay witness testimony. (Doc. 17 at 20.)

# CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). However, a district court should credit as true medical opinions and a claimant's testimony that was improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (precluding remand for further proceedings if the purpose is solely to allow ALJ to revisit the medical opinion he rejected).

Plaintiff has requested a remand for benefits or, alternatively, a remand for further proceedings. The Court concluded that the first requirement of credit as true was satisfied, because the ALJ rejected the opinion of Dr. D'Souza without legally valid reasons. However, the Court finds this case would benefit from further proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-01 (9th Cir. 2014). "Administrative proceedings are generally useful where the record 'has [not] been fully developed,' there is a need to resolve conflicts and ambiguities, or the 'presentation of further evidence . . . may well prove enlightening' in light of the passage of time." *Id.* at 1101. Here, the Court has determined Plaintiff's case should be remanded so the ALJ may consider the November 2021 records from Dr. Ahmed and pulmonary function testing. Given the passage of time, there necessarily will be further evidence regarding whether suffered from, or continues to suffer from, long COVID. Additionally, Dr. D'Souza's opinion is extremely broad and restrictive, and it conflicts with the other medical opinions in the record. It is the ALJ that should parse his findings in the first instance, not this Court.

Upon remand, the ALJ shall consider the November 2021 evidence submitted for the first time to the Appeals Council. (AR 31-46.) In light of that evidence, as well as any new evidence obtained, the ALJ should reconsider the testimony of Drs. Goldstein and D'Souza, the RFC, and the Alders' lay witness testimony.

Accordingly,

**IT IS ORDERED** that this case is remanded to the ALJ for a new hearing and further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court should enter judgment and close this case.

Dated this 21st day of September, 2023.

_____
Honorable Lynnette C. Kimmins
United States Magistrate Judge